COMMONWEALTH vs. WILLIAM J. CERVENY.

Hampden.  May 7, 1982. — August 26, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Conspiracy. Constitutional Law*, Double jeopardy. *Collateral Estoppel. Due Process of Law*, Vagueness of regulation. *Practice, Criminal*, Required finding, Duplicitous convictions.

Prosecution of a defendant for conspiracy to commit larceny was not barred on the ground that his coconspirator had previously been acquitted of related crimes. [283-286]

There was no merit to a criminal defendant's contention that certain regulations were so vague as to preclude his prosecution for conspiracy, especially since there appeared to be no connection between any claimed vagueness of the regulations and the defendant's criminal conduct. [286-287]

Evidence at the trial of indictments charging conspiracy to commit larceny was sufficient to warrant a finding that the defendant had tacitly or expressly combined with another to defraud the Department of Public Welfare of public monies. [287]

Evidence that a defendant charged with conspiracy to commit larceny filed seven different forms providing false information to the Rate Setting Commission was insufficient to establish the existence of seven separate conspiracies, although evidence that the forms were filed for three separate years and that each year the defendant and his accountant discussed the filling out of the forms was sufficient to permit the conclusion that a separate conspiracy was entered into each year. [287-289]

INDICTMENTS found and returned in the Superior Court, three on November 12, 1974, and four on February 7, 1975.

The cases were tried before *Charles S. Cohen*, J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Terry Nagel* for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant, William J. Cerveny, appeals his convictions by a jury in the Superior Court in Hampden County on seven indictments of conspiracy to commit larceny. The indictments stem from Cerveny's operation of three nursing homes and a rest home in the Springfield-Westfield area. Prior to the conspiracy trial, Cerveny, several corporate defendants, and Howard Keeler, the alleged coconspirator, were tried together for the substantive offenses underlying the conspiracies. Cerveny was found guilty on multiple counts of perjury and attempted larceny; the corporate defendants were found guilty on indictments charging that they falsified information required to be filed with the Rate Setting Commission (commission); and Keeler was acquitted on four indictments charging attempted larceny. Cerveny appealed, and this court set aside the attempted larceny convictions on the ground that they were duplicitous with respect to the perjury convictions. *Commonwealth* v. *Cerveny*, 373 Mass. 345 (1977). During the pendency of that appeal, Cerveny was tried and convicted on the conspiracy counts that are at issue here.[1] At that time conspiracy offenses were required to be tried separately from the substantive offenses. G. L. c. 278, § 2A, repealed by St. 1979, c. 344, § 43. See Mass. R. Crim. P. 9 (e), 378 Mass. 859 (1979). Cerveny was fined $1,500 on each of the seven conspiracy convictions.

Cerveny now argues that the convictions are barred by the doctrine of collateral estoppel, on the ground that the alleged coconspirator Keeler was previously acquitted of related crimes. He also argues that certain material terminology in the regulations underlying the indictments is so vague as to require acquittal. He maintains further that he was entitled to required findings of not guilty as to all

---

[1] The indictments charging conspiracy were brought at the same time as the indictments charging the defendants with the substantive offenses.

charges because the evidence was not sufficient to warrant guilty verdicts. Finally, he argues that the indictments, seven in number, are duplicitous and therefore all of the verdicts cannot stand. We disagree with all of Cerveny's arguments except the last. Some of the indictments are duplicitous and the verdicts must be reversed; there is no error as to the remaining indictments.

Most of the facts leading up to Cerveny's convictions are set forth in *Commonwealth* v. *Cerveny, supra,* and the details need not be repeated here. Cerveny, by means of a wholly owned holding company, owned and operated three nursing homes and a rest home, all providing care to a number of publicly assisted patients. The homes were compensated for this care by the Department of Public Welfare at per diem rates fixed by the commission. In fixing the rates, the commission relied on annual reports, called "RSC-1 forms," required to be submitted by each home. The rates varied according to the owner's equity interest in the home, and permitted the owner to recover a reasonable return on his investment.

Cerveny caused a number of fictitious payments to be made by the holding company to the homes. The "payments" were designed to inflate artificially the equity capital that was reflected in the RSC-1 forms, and thereby increase the per diem rates payable by the Department of Public Welfare. Some of the checks written to effectuate these transactions were signed by Cerveny. Others were written and signed by Cerveny's accountant, Howard Keeler. In addition to the transactions just described, Cerveny also caused certain mortgages on some of the homes to be increased. Although the borrowed funds were never used in connection with the operation of the homes, but were used to fund certain other enterprises, Cerveny nevertheless caused the interest payments on these loans to be listed in the RSC-1 forms as compensable operating expenses, contrary to the commission's regulations.[2]

---

[2] The submission of the false information relative to the interest on the mortgages is not mentioned in the court's decision in *Commonwealth* v. *Cerveny,* 373 Mass. 345 (1977).

Howard Keeler, who was Cerveny's accountant and employee, prepared the RSC-1 forms each year. Keeler testified that Cerveny instructed him to enter the false information on the forms, contrary to Keeler's own recommendation. He stated that on three separate occasions, in 1971, 1972, and 1973, he discussed the matter with Cerveny, and was expressly told to enter the false information on the RSC-1 forms. He further stated that he knew the forms did not paint an accurate picture of the operations of the homes, and that he was acting contrary to his "code of ethics," but that nevertheless he "went along with it." Four witnesses, Douglas A. Madsen, Roger R. Laferriere, Shirley Petrucelli, and Mildred Keeler all testified that Keeler had expressed his misgivings about and opposition to the accounting practices. There was also testimony that during this time Keeler received substantial salary increases and the use of a car, and that after the first trial his salary was reduced and his use of the car terminated.

1. Cerveny's first contention is that his convictions cannot stand because the Commonwealth is barred by the doctrine of collateral estoppel from proving that Keeler was a coconspirator to the crimes. Cerveny alleges that at the first trial it was conclusively established that Keeler lacked the criminal intent necessary to be found guilty of the crimes. Since Keeler cannot now be convicted of conspiracy, it is argued, the conviction of the remaining alleged coconspirator must be vacated.

It will simplify matters if we assume for the purposes of this case that the question of Keeler's involvement in the conspiracy has been finally decided, and that for all practical purposes he stands acquitted of that crime. The question is then reduced to whether the prior determination of Keeler's innocence is binding on the Commonwealth in its subsequent prosecution of Cerveny.

The defendant relies primarily on *Ashe* v. *Swenson*, 397 U.S. 436 (1970). In *Ashe*, the United States Supreme Court held that principles of collateral estoppel are embodied in the Fifth Amendment guarantee against double jeopardy,

and are therefore enforceable against the States through the Fourteenth Amendment. See *Benton* v. *Maryland*, 395 U.S. 784 (1969). *Ashe*, however, involved the attempted relitigation of an issue previously decided in favor of the same defendant. It did not involve nonmutual collateral estoppel, where the determination of an issue decided favorably to one party is subsequently applied for the benefit of a different party. See *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322 (1979); Restatement (Second) of Judgments § 29 (1982). *Ashe*, founded as it was on double jeopardy principles, is therefore distinguishable from the instant case. If an issue has previously been decided favorably to defendant A, it can hardly be said that the subsequent relitigation of that issue in the trial of defendant B places B twice in jeopardy for the same offense.

In the recent case of *Standefer* v. *United States*, 447 U.S. 10 (1980), the United States Supreme Court made it clear that the Federal law doctrine of nonmutual collateral estoppel does not apply to criminal cases. There the Court upheld the conviction of a defendant accused of aiding and abetting a government agent in accepting unlawful compensation, even though the agent had been acquitted earlier of the substantive crimes. Although the decision was based on Federal common law grounds, the Court stated, *supra* at 22 n.16: "Nothing in the Double Jeopardy Clause or the Due Process Clause forecloses putting petitioner on trial as an aider and abettor simply because another jury has determined that his principal was not guilty of the offenses charged. Cf. *Ashe* v. *Swenson*, [*supra*]." See also *United States* v. *Espinosa-Cerpa*, 630 F.2d 328, 330-333 (5th Cir. 1980).

Cerveny seeks to distinguish *Standefer* on the ground that in the instant case Cerveny was a party to the prior proceeding. The difference, however, is not material. We think it clear that under *Ashe*, the doctrine of collateral estoppel applies only where there exists mutuality of parties in the sense that the issue was previously decided in favor of the same party. It is unclear whether Cerveny also relies on Massa-

chusetts common law in support of his collateral estoppel
argument. Lest there be any doubt, however, we put any
such claim to rest.

There is no doubt that one cannot commit a conspiracy
alone. And it is also true that, if at a single trial for conspiracy
all but one of the defendants are acquitted of the charge, a
conviction of the remaining defendant must be set aside.
*Commonwealth* v. *Benesch,* 290 Mass. 125, 135-137 (1935).
See *Commonwealth* v. *Slate,* 11 Gray 60, 63 (1858). This
court has never confronted the question whether, in the case
of separate trials, the acquittal of a coconspirator precludes
the subsequent conviction of the other. Some courts have
refused to permit inconsistent verdicts. E.g., *United States* v.
*Bruno,* 333 F. Supp. 570 (E.D. Pa. 1971); *Eyman* v.
*Deutsch,* 92 Ariz. 82 (1962); *People* v. *Levy,* 299 Ill. App.
453 (1939). We think the sounder view, however, is that ver-
dicts rendered in separate conspiracy trials need not always
be logically consistent. See *United States* v. *Espinosa-Cerpa,*
*supra; United States* v. *Musgrave,* 483 F.2d 327 (5th Cir.),
cert. denied, 414 U.S. 1023 (1973); *People* v. *Superior Court,*
44 Cal. App. 3d 494 (1975). See also *Gardner* v. *State,* 286
Md. 520 (1979); *Commonwealth* v. *Byrd,* 490 Pa. 544
(1980). We also note that this is the view taken by the Model
Penal Code § 5.04(1)(b) (1974). See Model Penal Code
§ 5.03, at 104-106, Comment (Tent. Draft No. 10, 1960).

A finding of not guilty at a criminal trial can result from
any number of factors having nothing to do with the de-
fendant's actual guilt. A not guilty verdict may result from
an exclusionary rule of evidence, inadequate investigation
or proof, the composition of the jury, or the defendant's
own insanity. Moreover, the jury may assume the power to
acquit out of compassion or prejudice, and the prosecution
is then powerless to seek a judgment notwithstanding the
verdict or a new trial on the ground that the verdict is
against the weight of the evidence. See, e.g., *Standefer* v.
*United States, supra* at 22-23; *Commonwealth* v. *Byrd,* 490
Pa. 544, 552-553 (1980). The injustice of an erroneous ac-
quittal of a conspirator ought not to be compounded by a

rule of law that requires the acquittal of his coconspirator. No doubt such inconsistency in verdicts is intellectually discomforting. Nevertheless, the public interest in securing just and accurate results in the criminal law leads us to conclude that the possibility of inconsistent verdicts should not bar the relitigation of an issue previously decided in favor of another defendant.

2. Cerveny next contends that the regulations of the commission, in failing to define "holding company" and "excess cash," were so vague and indefinite as to preclude his prosecution for conspiracy. Cerveny offers no explanation why the term "holding company" is impermissibly vague, or how any such vagueness might have been prejudicial to him.[3] In the circumstances, we see nothing unduly vague about this term.

The regulations of the commission provided that excessive cash was to be deducted from equity in calculating the per diem rate. 114.2 Code Mass. Regs. § 2.09(4)(b)(xiv) (1981). See Commonwealth v. Cerveny, 373 Mass. 345, 349 (1977).[4] Cerveny appears to argue that the lack of any standard, by which an accountant could readily decide what cash was excessive, made it impossible for him to determine whether or not the amounts represented by the fictitious payments would be rejected as excess cash. We are at a loss, however, to understand how this might reflect on the criminality of his actions. Surely we cannot believe that Cerveny would submit false information to the commission in the belief that the consequences of his deception would be negatived. We rejected a similar argument in Cerveny's previous appeal. See Commonwealth v. Cerveny, supra at 351-352. In addition, the indefiniteness of the regulation could have no bear-

---

[3] A "holding company" is defined as "a company that owns part or all of one or more other companies for purposes of control." Webster's Third Int'l Dictionary 1079 (1961).

[4] The regulations do not explicitly mention "excess cash," but instead list as one of the deductions "other assets not directly related to or necessary for the provision of patient care to publicly-aided patients."

ing on Cerveny's decision to list as a deductible expense the interest payments on the mortgage increases. A closer connection between the objectionable conduct and the directive of the challenged law must exist before a vagueness claim can succeed.

3. The trial judge did not err in refusing to direct verdicts in favor of Cerveny. The evidence at trial was sufficient to permit a rational jury to conclude that Keeler participated with Cerveny in the perpetration of the crimes. Keeler knew that false information was being included in the RSC-1 forms, and he participated in the preparation and submission of the forms to the commission. He also signed a number of the checks that were written to effectuate the fictitious payments made to the homes. Finally, Keeler received a significant increase in salary and the use of a car during this time. The jury could reasonably infer from this that Keeler tacitly or expressly combined with Cerveny to defraud the Department of Public Welfare of public monies. They were not required to believe his testimony that "[t]here was no agreement." The line that separates mere knowledge of unlawful conduct and participation in it, is "often vague and uncertain. It is within the province of the jury to determine from the evidence whether a particular defendant had crossed that line." *Commonwealth v. Beneficial Fin. Co.*, 360 Mass. 188, 250 (1971), cert. denied sub nom. *Farrell v. Massachusetts*, 407 U.S. 910 (1972), and sub nom. *Beneficial Fin. Co. v. Massachusetts*, 407 U.S. 914 (1972).

4. Cerveny was convicted and punished for having committed seven separate conspiracies during the course of a three-year period. We agree that the evidence does not support a finding of seven conspiracies. The indictments upon which Cerveny was tried correspond to seven RSC-1 forms filed by him on behalf of the various nursing homes for the calendar years 1971, 1972, and 1973. The forms were usually submitted to the commission during March or April following the end of the calendar year. The indictments charged conspiracies on the following dates: March 9, 1972

(indictment 40034); March 10, 1972 (indictment 40036); March 5, 1973 (indictment 40035); March 15, 1974 (indictment 75-620); March 21, 1974 (indictment 75-626); April 1, 1974 (indictment 75-631); and April 10, 1974 (indictment 75-657).

The evidence adduced by the Commonwealth supported at most a finding of three separate conspiracies. Keeler testified that he and Cerveny discussed how the RSC-1 forms submitted in 1972 were to be filled out, and that "[t]he same conversation was applied in both nursing homes on the RSC's." Similar conversations were had relative to the forms submitted in 1973, and again with respect to the forms submitted in 1974. The four RSC-1 forms submitted in 1974 were treated both by the Commonwealth and by Keeler as a group rather than as separate matters. Also, the fictitious payments made by the holding company to the different homes were accomplished at the same time each year (between December 30, and January 2 or 3). There was no other evidence tending to show the existence of separate conspiracies.

The Commonwealth's cryptic argument that there were seven conspiracies is without merit. The fact that RSC-1 forms were submitted on behalf of separate nursing homes does not suffice to prove separate conspiracies. The essence of a conspiracy is the agreement. No overt act is necessary to complete the crime; the making of the agreement itself is enough. *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 249-250 (1971). *Commonwealth* v. *Harris*, 232 Mass. 588, 591 (1919). A conspiracy thus is determined not by reference to the accomplishment of a particular underlying crime, but by reference to the accomplishment of the objective embraced by the agreement. See *Braverman* v. *United States*, 317 U.S. 49, 53 (1942). A conspiracy is a continuing offense, and if multiple conspiracies are charged the burden is on the Commonwealth to prove the existence of separate conspiracies. Proof of an unlawful agreement and several separate acts in furtherance of the agreement will not do. Here, the identity of the parties, the objectives, and the

means all refute the suggestion that separate, unlawful combinations occurred with respect to each RSC-1 form.

We do think, however, that the evidence was sufficient to permit the conclusion that a separate agreement was made each year when Cerveny and Keeler discussed the matter of filling out the RSC-1 forms. The significant time intervals involved and the separate nature of the three discussions warrant this conclusion.

The convictions and punishments on four of the indictments were duplicitous and therefore in violation of Cerveny's right against double jeopardy. See *Commonwealth v. Jones*, 382 Mass. 387, 395-397 (1981); *Kuklis v. Commonwealth*, 361 Mass. 302, 306-309 (1972); *Commonwealth v. Winter*, 9 Mass. App. Ct. 512, 522-528 (1980). See also *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Ordinarily, it is for the jury to determine whether the evidence has shown one conspiracy or several. See *Commonwealth v. Beneficial Fin. Co.*, 360 Mass. 188, 371 (1971). If, however, multiple charges have been brought under a single conspiracy statute and it appears that the evidence cannot support findings of guilty on all the conspiracies charged, the judge should enter required findings of not guilty or set aside the verdicts (according to the circumstances) as to each of the unsupported charges. Merely refraining from imposing multiple punishments will not adequately protect the defendant's constitutional rights. *Commonwealth v. Jones, supra.* Cf. *Commonwealth v. Sherry*, 386 Mass. 682, 700 (1982).[5]

We affirm the judgments entered on the three indictments (indictments 40034, 40035, and 75-620), dated near-

---

[5] We observe, however, that the situation may be different where duplicitous charges have been brought under separate conspiracy statutes. See, e.g., *United States v. Honneus*, 508 F.2d 566, 569-570 (1st Cir. 1974), cert. denied, 421 U.S. 948 (1975). See also *Commonwealth v. Winter*, 9 Mass. App. Ct. 512, 522-528 & n.12 (1980).

est the beginning of each year in which conspiracies were charged. The judgments on the remaining indictments are reversed and the verdicts set aside. Judgment on these indictments is to be entered for the defendant.

*So ordered.*