## Commonwealth *vs.* Kevin G. Medeiros.

No. 07-P-418.

Plymouth. May 6, 2008. - January 26, 2009.

Present: Berry, Smith, & Rubin, JJ.

Further appellate review granted, 453 Mass. 1106 (2009).

*Rape. Joint Enterprise. Evidence,* Joint enterprise, Medical record, Corroborative evidence. *Practice, Criminal,* Verdict, Assistance of counsel. *Constitutional Law,* Assistance of counsel.

At the trial of indictments charging the defendant with, inter alia, aggravated rape based on a theory of joint venture as the aggravating factor, a codefendant's acquittal on all the rape charges against him did not require reversal of the defendant's conviction, as the mere inconsistency of the verdicts did not render the guilty verdict erroneous. [573-577] Berry, J., dissenting.

At the trial of indictments charging the defendant with rape of a child with force, assault and battery, and aggravated rape, a factual basis for the defendant's claim of ineffective assistance of counsel did not appear indisputably on the record, where counsel's introduction of the victim's medical records was not manifestly unreasonable, and where counsel's decision not to seek redaction of those records permitted an argument that otherwise would have been unavailable [577-579]; further, there was no merit to the claim of ineffective assistance arising from the introduction of the victim's testimony about actions taken by her mother and the police [580-581].

Indictments found and returned in the Superior Court Department on September 19, 2003.

The cases were tried before *Linda E. Giles,* J.

*Stacey Gross Marmor* for the defendant.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

Rubin, J. In this criminal case, the defendant was convicted of rape of a child with force, assault and battery, and aggravated rape, with the only evidence supporting aggravation being that the rape was committed as part of a joint venture. His codefendant, who is not a party to this appeal, was convicted only of

assault and battery, and not of rape.[1] The defendant contends that his conviction of aggravated rape cannot stand in light of his co-defendant's acquittal on the rape charges, and that his trial counsel was ineffective.

## I.

We summarize the evidence in the light most favorable to the Commonwealth. At the time of the rape, the victim was fifteen years old, and lived during the summer with her mother in a campground in Rochester. One evening in July, 2003, after an argument with her mother, she wandered the campground. She met her friend, who was about fourteen years old, and later that night, they ran into the defendant and codefendant, both of whom she knew. The four walked together, and between 11:00 P.M. and midnight, the friend departed, leaving the victim with the defendant and the codefendant.

The three arrived in the area of a deserted campsite. The victim stopped and bent down to tie her shoe. When she stood up, the defendant and the codefendant were behind her, one on each side. They each grabbed one of her arms and pulled her toward the vacant tent. The victim tried "wiggling away from them." The codefendant unzipped the tent, and the defendant pushed the victim inside.

The victim, who was the sole witness for the Commonwealth, testified that, at that point, she "thought they were joking around." The defendant laid on the tent floor a box spring and mattress that had been pushed up against a side of the tent. The codefendant closed the front of the tent.

The defendant pushed the victim onto the mattress, and pulled off both her T-shirt and tank top. She told him to stop. The co-defendant held up her arms so that she could not push the defendant away. The defendant removed her pants and undergarments, leaving her naked on the bed.

The codefendant kept holding the victim. She told the defend-

---

[1]Both the defendant and the codefendant were charged with aggravated rape, G. L. c. 265, § 22(*a*); rape of a child with force, G. L. c. 265, § 22A; indecent assault and battery, G. L. c. 265, § 13H; and assault and battery, G. L. c. 265, § 13A. The judge granted both defendants' motions for a directed verdict of not guilty on the indecent assault and battery charges.

ant and the codefendant to stop. Although she struggled, the defendant raped her vaginally while the codefendant held the victim's left leg.

According to the victim's testimony, the defendant continued for "a couple of hours," but after twenty or thirty minutes, the codefendant left the tent, saying "he was getting out of there because he didn't need this on him." The victim was crying and speaking loudly. She testified that she wanted it over. The defendant then forced the victim to engage in oral sex for approximately twenty minutes.

After the defendant left, the victim gathered her clothing and dressed. She returned to her campsite. At that point, it was approximately 3:00 A.M. The victim did not tell her mother what had happened because her mother was angry at her for keeping late hours. In the morning, her mother confronted her about having been out so late. The mother told the victim that she would be sent to New Hampshire to live with her father because she was getting in trouble at the campsite. Her mother left, and when she returned she was upset because she had heard something had happened between the victim and the defendant. The mother asked the victim what had happened. The victim told her mother about the rape, her mother called the police, and the victim was ultimately taken to the hospital.

The defendants, who were represented separately, called one witness, another resident of the campground, who testified that the victim was, in fact, with a group of girls during the time the assault was alleged to have occurred. In their closing arguments, the defendants argued that the victim fabricated the claim of rape to avoid being sent away from the campground by her mother.

## II.

The defendant argues that, because the codefendant was acquitted of all the rape charges against him, and convicted only of simple assault and battery, the defendant's conviction of aggravated rape based on a theory of joint venture as the aggravating factor was impermissible. Joint venture liability means that two people have acted together. Proof of a joint venture requires the Commonwealth to show "that the defendant was present at the scene of the crime, that he had knowledge that another intended to commit the crime and shared the intent to commit the crime,

and that, by agreement, he was willing and available to help the other if necessary." *Commonwealth* v. *Netto*, 438 Mass. 686, 701 (2003).

Had the codefendant, convicted only of assault and battery, been found a joint venturer with the defendant, the jury could have convicted the codefendant of rape on the joint venture theory. The jury acquitted him instead. The codefendant was present at the scene of the crime, and the defendant's argument proceeds on the premise that the codefendant's acquittal of rape necessarily means that the jury found that he either did not share the intent to commit the crime with the defendant, or that he was not willing and able by agreement to help him. This would mean that the jury found no joint venture.[2] And in the absence of a joint venture, the defendant argues, he could not be convicted of aggravated rape in this case, where the only aggravating factor of which evidence was presented and on which the jury was charged was that the crime was committed as part of a joint venture.[3]

There is some logic to the defendant's argument. Our general

---

[2]After the jury returned their verdicts, the defendant filed a motion for a directed finding of not guilty with regard to the aggravated rape charge, arguing that since the codefendant was found not guilty of rape, joint venture liability was impossible. The judge denied the motion, writing, "[T]he jury could have found that a joint enterprise took place but that [the codefendant] abandoned that joint enterprise." The defendant argues, correctly, that the judge's conclusion that the jury could have found that the codefendant withdrew from the joint venture, and acquitted the codefendant of rape on that basis, was unsupported by the evidence. A finding of withdrawal or abandonment requires "at least an appreciable interval between the alleged termination and [the commission of the crime], a detachment from the enterprise before the [crime] has become so probable that it cannot reasonably be stayed, and such notice or definite act of detachment that other principals in the attempted crime have opportunity also to abandon it." *Commonwealth* v. *Elliot*, 430 Mass. 498, 501 n.3 (1999), quoting from *Commonwealth* v. *Cook*, 419 Mass. 192, 202 (1994). The evidence presented did not support a finding of abandonment since the only testimony offered was that the codefendant did, in fact, participate in the rape well past the point where abandonment was possible.

[3]Contrary to the suggestion in the dissent, see *post* at note 3, this case involves only a claim of a factually inconsistent verdict, not a claim of a legally inconsistent verdict. A fatally inconsistent verdict, unlike a legally inconsistent verdict, does not automatically require reversal. "Factually inconsistent verdicts occur when two or more verdicts in a single case, considered together, suggest inconsistent interpretations of the evidence presented at trial." *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 151 n.8 (2008). In this case, the defendant's conviction of aggravated rape required the jury to interpret the evidence to prove the existence of a joint venture beyond a

rule is that "mere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury." *Commonwealth* v. *Scott,* 355 Mass. 471, 475 (1969). We have said that this "rule recognizes the power, possibly salutary, of juries to compromise and to act out of leniency." *Commonwealth* v. *Diaz,* 19 Mass. App. Ct. 29, 33 (1984). The defendant, however, points to an arguably contrary, long-standing rule in the context of conspiracy that "if at a single trial for conspiracy all but one of the defendants are acquitted of the charge, a conviction of the remaining defendant must be set aside." *Commonwealth* v. *Cerveny,* 387 Mass. 280, 285 (1982). The defendant argues in essence that just as "one cannot commit a conspiracy alone," *ibid.,* one cannot commit a joint venture alone, and that, consequently, in the face of his codefendant's acquittal on the rape charges, his conviction of aggravated rape cannot stand.

When presented with a similar argument in *Commonwealth* v. *Wojcik,* 43 Mass. App. Ct. 595, 602 (1997), we indicated in dictum that it might be correct. We distinguished that case from the conspiracy cases, and affirmed the convictions, saying, "We are not faced here with a circumstance in which a defendant was convicted of a crime based on joint enterprise and other defendants were *acquitted* of similar charges in the same trial." *Ibid.* We also used similar language in affirming a conviction in *Commonwealth* v. *Coleman,* 30 Mass. App. Ct. 229, 235 (1991), saying, "We do not have here a defendant convicted of a crime based on joint enterprise and all other defendants acquitted of similar charges in the same trial," though we noted in a footnote that "[t]he conclusion that this verdict configuration in the same trial requires reversal of all guilty verdicts is not a necessary

reasonable doubt; the codefendant's acquittal of the rape charge suggests an inconsistent interpretation of that same evidence. A legally inconsistent verdict occurs where a defendant is convicted of two crimes the elements of which are "mutually exclusive," *Commonwealth* v. *Chandler,* 29 Mass. App. Ct. 571, 580 (1990), such that "removed from the factual context of the particular case, the government could not possibly have proved the elements of both crimes with respect to the defendant." *Commonwealth* v. *Elliffe,* 47 Mass. App. Ct. 580, 584 (1999). The classic example is that "it is inconsistent in law for a defendant to be convicted both of stealing property and of receiving the same property." *Commonwealth* v. *Nascimento,* 421 Mass. 677, 683 (1996).

one." *Id.* at 235 n.6, citing *United States* v. *Bucuvalas*, 909 F.2d 593 (1st Cir. 1990), and *Commonwealth* v. *Nighelli*, 13 Mass. App. Ct. 590, 595 (1982). Finally, an early case suggests that the rule we apply in conspiracy cases applies more broadly to contexts like that involved here. See *Commonwealth* v. *Slate*, 11 Gray 60, 63 (1858) (suggesting that the rule for conspiracy cases applies to any offense that "involve[s] from its character, as in the case of a charge of a conspiracy or a riot, the united act of two or more individuals to constitute an offence in either").

The defendant's argument, though, ultimately is foreclosed by our more recent decision in *Commonwealth* v. *Clements*, 51 Mass. App. Ct. 508 (2001), *S.C.*, 436 Mass. 190 (2002).[4] In *Clements*, the defendant was convicted of murder in the second degree as a joint venturer. *Id.* at 509. His codefendant was acquitted of all charges. *Ibid.* Yet his codefendant was the only person who could have been his principal. See *id.* at 522-523. See also *id.* at 536 (Duffly, J., dissenting) ("[T]he Commonwealth must have presented evidence sufficient to establish, beyond a reasonable doubt, that [the codefendant] was the principal in the shooting"). Indeed, a review of the transcript in the *Clements* case reveals that the jury were instructed they could convict the defendant on a joint venture theory only if he was acting as a joint venturer with his codefendant.

In *Clements*, "[w]e . . . reject[ed] the defendant's claim that the verdict of acquittal of [the codefendant] and the verdict of guilty as to the defendant on the theory of joint venture are inconsistent verdicts which require reversal of the defendant's conviction of second degree murder." *Id.* at 523.[5] We stated that "mere inconsistency of verdicts does not render a guilty verdict

---

[4]The Supreme Judicial Court granted review in *Clements*, limiting its "consideration to the issue whether inconsistent, recanted extrajudicial statements of identification that were the sole evidence of guilt are sufficient to convict." See *Commonwealth* v. *Clements*, 436 Mass. 190, 191 (2002). It ultimately affirmed the defendant's convictions. The Supreme Judicial Court's action left undisturbed the holding of this court with respect to the inconsistency of the verdicts, a holding necessary for the affirmance of the defendant's conviction of murder in the second degree. While this does not indicate Supreme Judicial Court approval or endorsement of our holding in *Clements*, we are of course bound by our prior decision in that case. See *Commonwealth* v. *Lindsey*, 72 Mass. App. Ct. 485, 495 (2008).

[5]As this language makes clear, and contrary to the assertion by the dissent,

erroneous." *Ibid.*, quoting from *Commonwealth* v. *Robinson*, 48 Mass. App. Ct. 329, 341 (1999).

*Clements* is controlling here. The defendant therefore is not entitled to a new trial on this issue.

### III.

The defendant also claims ineffective assistance of trial counsel. The standard is well-known: to prevail on an ineffective assistance claim, the defendant must show that "there has been serious incompetency, inefficiency, or inattention of counsel . . . falling measurably below that which might be expected from an ordinary fallible lawyer," and that the failure "deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). If the defendant argues that counsel's strategy or tactics were faulty, he must show that the challenged tactical judgments were "manifestly unreasonable." *Commonwealth* v. *Gonzalez*, 443 Mass. 799, 809 (2005), quoting from *Commonwealth* v. *Parker*, 420 Mass. 242, 248 n.7 (1995).

In this case, the defendant has not initially brought this claim as part of a motion for a new trial under Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), but raises it for the first time on direct appeal. As the Supreme Judicial Court has explained, this approach is "strongly disfavor[ed]." *Commonwealth* v. *Zinser*, 446 Mass. 807, 809 n.2 (2006). Consequently, when presented with an ineffective assistance claim in this procedural posture, we will reverse only if the factual basis for the claim "appears indisputably on the trial record." *Id.* at 811, quoting from *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994).

### A.

The defendant's attorney introduced the victim's unredacted medical records in order to impeach the victim during cross-examination; while the records had not been subpoenaed as required by G. L. c. 233, §§ 79 and 79G, the trial judge, at defense counsel's request, and over the Commonwealth's objection, allowed them in evidence. The medical records contained incon-

see *post* at note 2, the inconsistency of the verdicts was thus squarely addressed in *Clements*.

sistencies with the victim's trial testimony, including the fact that at the hospital she had not alleged that she was orally penetrated, which she did allege at trial, and that at the hospital she had alleged digital penetration, although at trial she did not. The records also included a record signed by a physician that indicated that her "clinical impression" was "sexual assault." They contained notations of the victim's statements that she was "raped" or "sexually assaulted," and they contained a recounting of her report of the incident that named the defendant repeatedly throughout. The records also indicated that the victim suffered no bruising, swelling, or bleeding, recording only tenderness in the bilateral area of her thighs.[6]

The defendant argues first that trial counsel was ineffective both in submitting in evidence the victim's medical records and in failing to redact them. The records were introduced at the defendant's request and over the objection of the Commonwealth that the admission did not comply with G. L. c. 233, §§ 79 and 79G. Their introduction was central to the defense strategy. In this case, the defense chose to admit that the victim had contemporaneously claimed she had been sexually assaulted, had been sent to the hospital, and had repeated her claims there. The defense theory was that the victim's claim of rape was made up in order to have an explanation for the late night out that resulted in the victim's mother's decision to send the victim to live with her father.

This defense strategy did not work, but it does not "appear[] indisputably on the trial record" that its employment with its attendant introduction of the medical records was manifestly unreasonable. The alternative might have been a credibility contest with the defendant offering no explanation at all for why the victim might have been, as he argued, falsely claiming to have been raped, and without the evidence of inconsistency that the defendant relied upon in an attempt to portray the allegations against him as false.

---

[6]The Commonwealth points out that the medical report notes a serosanguineous discharge from the victim's cervix, and defines serosanguineous to mean "bloody." This portion of the medical report was not highlighted to the jury, nor was serosanguineous defined for them. The victim testified that she suffered no bleeding as a result of the rape.

Turning to the redaction the defendant now argues that his trial counsel should have sought, and assuming without deciding that the defendant would have been entitled to it, his complaint about counsel's failure to object is disposed of by what we have just said. The defendant urges that the victim's detailed account of the sexual assault should have been redacted; that its references to the defendant by name should have been redacted; and that three other references in the report to the victim reporting that she had been sexually assaulted should have been redacted.

This argument ignores the strategic choice made by trial counsel. In closing, trial counsel argued that the victim's statements at the hospital were inconsistent with her testimony at trial precisely because the story she was telling was not true. This argument would have been unavailable without the jury knowing that she had, indeed, reported that she was raped by the defendant, and having before them the details of her contemporaneous account. The defendant does not explain why, in light of defense counsel's trial strategy, it would have made any sense to seek the redactions he now suggests.[7]

Without a developed record including, for example, an affidavit from trial counsel explaining why he sought to introduce the records without redaction, we cannot determine the precise rationale behind trial counsel's decisions. But in light of trial counsel's trial strategy, which, as we have said, was not sufficiently obviously unreasonable to amount to ineffective assistance, we can say that it does not "appear[] indisputably on the trial record" that trial counsel's choices fell below what might be expected, or that they "deprived the defendant of an otherwise available, substantial ground of defence."

---

[7]The defendant also claims that trial counsel should have redacted a physician's "clinical impression" of "sexual assault." The defendant concedes that this clinical impression was admissible pursuant to G. L. c. 233, § 79G. He argues that the statement nonetheless should have been redacted as its admission in the absence of the procedures set forth in G. L. c. 233, § 79G, "denied [the defendant] the opportunity to subpoena [the doctor] and cross examine her during trial." See *Commonwealth* v. *Schutte*, 52 Mass. App. Ct. 796, 799 n.2 (2001). The statute provides a notice procedure that serves to ensure that a party will not be blindsided by the opposing party's introduction of medical records, but the defendant fails to explain how defense counsel's own introduction of the records without compliance with the statute could have denied him the opportunity to cross-examine the doctor at trial.

## B.

Finally, the defendant argues that the victim impermissibly provided self-corroborating testimony. See *Commonwealth* v. *Montanez*, 439 Mass. 441, 448 (2003) (impermissible self-corroboration to testify about the action a guidance counselor took as a result of a conversation with the victim), overruled in part by *Commonwealth* v. *Stuckich*, 450 Mass. 449, 457 n.11 (2008). Specifically, the defendant argues that the victim's testimony of action taken by her mother and the police was self-corroborative, conveying, first, that the victim was sufficiently credible that her mother was moved to call the police; second, that she was sufficiently credible that the police requested her to go to the hospital for a medical examination; and third, that she was sufficiently credible that the police arrested the defendant. We examine each piece of testimony in turn.

First, the victim did not in her direct testimony testify that it was her mother, rather than she, who called the police. Rather, as the Commonwealth points out, this testimony was elicited by defense counsel on cross-examination. Its purpose was to show, consistent with the defense strategy, that the victim herself had not called the police, but that her mother had done so. This was more consistent with the defense theory of a false accusation originally made by the victim to persuade her mother not to send her away.

Even assuming the testimony about the victim's mother calling the police was self-corroborative — a question we need not address — at most the defendant's argument amounts to a further challenge to trial counsel's strategy, and as we have explained above, at least in this procedural posture, the claim of ineffective assistance for the choice of strategy is without merit.

Second, we do not think the testimony in this case about the police asking the victim to go to the hospital can be characterized as self-corroborative. The evidence indicated that the hospital trip was for investigatory purposes and that the decision to send the victim to the hospital did not depend on the credibility of the victim. The victim testified in part as follows:

> *Q.:* "Now, when you spoke to the police, did you go into great detail about what happened?"

*A.:* "They didn't say I had to. They never asked. They asked me to give a brief description of what happened."

*Q.:* "They didn't go into any detail at all?"

*A.:* "Nope. Because they said I would have to do it at the hospital."

This testimony indicates that the hospital trip was procedurally required wholly independent of, and indeed prior to, anything the victim said to the police.[8] Since the evidence was admissible, there was no error in failing to object to it.

This leaves the defendant's argument that counsel should have objected to testimony by the victim that, as the defendant puts it, "conveyed to the jury that she was sufficiently credible such that the police arrested the defendant." Contrary to the defendant's claim, however, the victim provided no such testimony. In response to the question to which the defendant points ("And did you see if [the defendant] was placed under arrest at that time?"), the victim responded that the last she saw before going inside was the defendant standing near a police cruiser and talking with a police officer.[9]

*Judgments affirmed.*

BERRY, J. (dissenting). The jury were charged in this case that, as to the two codefendants tried together, proof of aggravated rape under G. L. c. 265, § 22(a),[1] depended on the existence of

---

[8]The victim's testimony of what happened at the hospital also demonstrated its investigative nature. She testified among other things that, once there, she was examined, and that hospital personnel used a "rape kit," which is a kit for collecting evidence.

[9]The victim's full answer was "I knew he was — I knew he was standing over near the police cruiser talking to the cop. And at that time [the defendant's] sisters and stuff and the rest of his family were coming to my site. So me and my mother went into the camper." The defendant misleadingly ends his quotation of the victim's response to the question whether she saw the defendant placed under arrest after the initial words, "I knew he was —."

[1]Aggravated rape under G. L. c. 265, § 22(a), is defined, in pertinent part, as follows:

"*Whoever has sexual intercourse or unnatural sexual intercourse with*

a joint venture. The codefendant was acquitted of the joint venture of aggravated rape, and was only convicted of assault and battery. The defendant alone was convicted as a joint venturer of aggravated rape. The majority affirms the defendant's conviction. Based on the current state of joint venture law and binding precedent, I respectfully dissent.

Given emerging concepts in other jurisdictions concerning the law of joint venture and conspiracy, further development of our Massachusetts criminal law on such issues may be in order, particularly the sustainability of the conviction of a single defendant joint venturer in a consolidated trial, wherein all other alleged codefendant joint venturers are acquitted. However, on the existing state of the law of joint venture in Massachusetts, as set forth in Supreme Judicial Court precedent (which we are bound to follow), the defendant's conviction should not stand.

As matter of existing Massachusetts law, "if at a single trial for conspiracy [and I would add joint venture] all but one of the defendants are acquitted of the charge, a conviction of the remaining defendant must be set aside." *Commonwealth* v. *Cerveny*, 387 Mass. 280, 285 (1982). Accord *Commonwealth* v. *Coleman*, 30 Mass. App. Ct. 229, 235 (1991) ("We do not have here a defendant convicted of a crime based on joint enterprise and all other defendants acquitted of similar charges in the same trial"); *Commonwealth* v. *Wojcik*, 43 Mass. App. Ct. 595, 602 (1997) ("We are not faced here with a circumstance in which a defendant was convicted of a crime based on joint enterprise and other defendants were acquitted of similar charges in the same trial").

One case, *Commonwealth* v. *Clements*, 51 Mass. App. Ct. 508 (2001), *S.C.*, 436 Mass. 190 (2002), deviates from the precedent set out in the aforecited cases, all of which are also

---

*a person*, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury and if either such sexual intercourse or unnatural sexual intercourse results in or is committed with acts resulting in serious bodily injury, or *[which] is committed by a joint enterprise*, or is committed during the commission or attempted commission of [a specially designated] offense . . . *shall be punished by imprisonment in the state prison for life or for any term of years*" (emphasis added).

cited in the majority opinion. *Clements* does not, I believe, support the weight placed on it in the majority's analysis.[2,3]

---

[2]The majority opinion appears to recognize the legal force of the *Cerveny*, *Wojcik*, and *Coleman* cases. Yet, notwithstanding this line of cases, the majority ultimately turns to the Appeals Court's *Clements* decision as support for the proposition that a defendant may be convicted as a joint venturer, with a solitary conviction of that particular defendant standing alone, and with all other jointly tried codefendants acquitted as participants in the joint venture. However, as the majority notes, on further appellate review of the *Clements* case, the Supreme Judicial Court expressly limited the issue to be considered as follows: "whether inconsistent, recanted extrajudicial statements of identification that were the sole evidence of guilt are sufficient to convict." *Commonwealth* v. *Clements*, 436 Mass. 190, 191 (2002). The Supreme Judicial Court did *not* address the joint venture question, and whether the sole conviction of one charged joint venturer, and the acquittal in the same trial of all other charged joint venturers, is an inconsistent verdict invalid as matter of law. The majority states that the Supreme Judicial Court in *Clements* "left undisturbed the holding of this court with respect to the inconsistency of the verdicts," see *ante* at note 4, and, from there, seems to suggest that by not engaging in further appellate review, and by not disturbing the analysis of the Appeals Court on joint venture, the Supreme Judicial Court somehow endorsed the Appeals Court's *Clements* holding on that issue. I do not so read the Supreme Judicial Court's action in limiting further appellate review to a different issue. Simply because the joint venture/inconsistent verdict question was not the subject of further appellate review does not mean that the joint venture/inconsistent verdict analysis in the Appeals Court's *Clements* decision can be deemed to have somehow overruled, or in some way to have changed or altered, the joint venture/inconsistent verdict precedent established in Massachusetts law by our highest court in *Cerveny*, *supra*, and followed by the Appeals Court in *Wojcik*, *supra*, and *Coleman*, *supra*. See note 3, *infra*.

[3]To be clear, I note that there is a difference between factually inconsistent verdicts and legally inconsistent verdicts. Factually inconsistent verdicts do not warrant reversal of the offenses on which guilty verdicts enter. Legally inconsistent verdicts compel reversal of the offenses on which guilty verdicts enter. "Our rule is well settled that, in cases tried before a jury, mere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury. The rule recognizes the power, possibly salutary, of juries to compromise and to act out of leniency." *Commonwealth* v. *Gonzalez*, 452 Mass. 142, 150-151 (2008) (citations, quotations, and footnote omitted). In *Gonzalez*, the court extended this well-settled rule to inconsistent factual verdicts by a judge in a bench trial. The Supreme Judicial Court, however, emphasized in *Gonzalez* that legally inconsistent verdicts are different.

> "A factually inconsistent verdict is distinct from the legally inconsistent verdict that arises when there exists no set of facts that the government could have proved in the particular case that would have resulted in the verdict at issue. See *Commonwealth* v. *Walker*, 442 Mass. 185, 203

When *Cerveny*, *supra*, one of the controlling cases, was decided in 1982, courts across the country, State and Federal, "generally held that the acquittal of all persons with whom a defendant is alleged to have conspired [or, I would add, engaged in a joint venture] precludes conviction of the remaining defendant." See Annot., Prosecution or Conviction of One Conspirator as Affected by Disposition of Case Against Coconspirators, 19 A.L.R. 4th 192, 197 (1983) (hereinafter A.L.R. Annotation). On this generally held issue of law, the Supreme Judicial Court's *Cerveny* case is included in the A.L.R. Annotation. See *id.* at 28 (Supp. 2008).

This "general rule," I would submit, applies equally to joint venture law, in that the law governing proof of the elements of a joint venture shares commonalties with, and, in the main, is analogous to, the elements of proof of a conspiracy. These commonalities are evident in the congruent holdings in *Cerveny*, *supra*, concerning conspiracy law principles, and *Coleman*, *supra*, and *Wojcik*, *supra*, concerning joint venture law principles. That being so, if all coconspirators — except one jointly tried conspiracy defendant — and if all joint venturers — except one jointly tried joint venturer defendant — are acquitted of the

(2004), quoting *Commonwealth* v. *Elliffe*, [47 Mass. App. Ct. 580, 584 (1999)] ('A defendant is entitled to relief "only where verdicts are legally inconsistent — i.e., where, removed from the factual context of the particular case, the government could not possibly have proved the elements of both crimes with respect to the defendant" '); *Commonwealth* v. *Nascimento*, 421 Mass. 677, 683 (1996) (inconsistent in law for defendant to be convicted both of stealing property and of receiving same property). Such legally inconsistent verdicts cannot be sustained, even when they are rendered by a jury."

*Id.* at 151 n.8. I believe that what is at issue in this case is a legally inconsistent verdict arising out of a joint trial, which yielded a jury verdict of not guilty with respect to the only other charged joint venturer, leaving the defendant — with no other person similarly found guilty — convicted by a jury verdict of guilty of the statutorily defined crime of aggravated rape by joint venture. It is an important distinction that joint venture is an element of proof of a violation of G. L. c. 265, § 22(*a*). We are not dealing with a theory of proof. If an element of a crime is not proved, there may be legally inconsistent verdicts. Joint venture is an element of this crime. See note 7, *infra*. Furthermore, a "legally inconsistent verdict[] cannot be sustained, even when rendered by a jury." *Gonzalez*, *supra*. Accordingly, I reject the majority's analysis, *ante* at note 3.

crime of conspiracy or joint venture, a conviction of the sole remaining conspirator or joint venturer cannot stand.

This exception, prevalent in old State and Federal law, was known as the "rule of consistency" exception to inconsistent verdicts. See A.L.R. Annotation, *supra* at 204-205. However, in recent developments, the rule of consistency among coconspirators — a rule that I believe is equally applicable to joint venture — once widely applied in Federal conspiracy cases (many of which are included in the compendium of Federal and State case law in the A.L.R. Annotation, *supra*), has been eroding.[4] To that end, the rule of consistency was reconsidered, and rejected, by the United States Court of Appeals for the First Circuit in *United States* v. *Bucuvalas*, 909 F.2d 593 (1st Cir. 1990).[5]

However, there has not been occasion, to the extent I can determine, for the Supreme Judicial Court to reconsider the rule of consistency in relation to Massachusetts criminal law concerning acquittals of all alleged coconspirators or, as most pertinent to this appeal, concerning, in a consolidated trial, the acquittal of the alleged codefendant coventurer on an indictment for aggravated rape by joint venture, leaving just one codefendant guilty of the requisite joint venture element of proof under the

[4]See Schuler, The Lone Conspirator, Criminal Law's Oxymoron — In Defense of the Rule of Consistency in Federal Conspiracy Cases, 2004 U. Ill. L. Rev 755. Compare Muller, The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts, 111 Harv. L. Rev. 771 (1998).

[5]In *Bucuvalas*, 909 F.2d at 593-594, the court held as follows:

"In this appeal, we have occasion to consider the effect of jury verdicts acquitting one alleged conspirator and convicting the sole other alleged conspirator on the same count in the same trial. Specifically, the convicted conspirator argues that the 'rule of consistency' — a traditionally recognized exception to the general principle proclaimed in *Dunn* v. *United States*, 284 U.S. 390 . . . (1932), that inconsistency in a criminal verdict does not require setting the verdict aside — invalidates his conviction. The defendant relies in large part on our approach in *United States* v. *Bosch Morales*, 677 F.2d 1, 3 (1st Cir. 1982), wherein we acknowledged the rule of consistency while recognizing a similar exception to the *Dunn* rule. In light of the reasoning of *United States* v. *Powell*, 469 U.S. 57 . . . (1984), however, we conclude that the rule of consistency embraced by *Bosch Morales* is no longer viable. We therefore affirm the judgment."

Commonwealth *v.* Medeiros.

aggravated rape statute. G. L. c. 265, § 22(*a*).[6,7]

There may be compelling reasons in this case not to follow the rule of consistency embedded in the holding in *Cerveny*, 387 Mass. at 285: "if at a single trial for conspiracy [and, I would add, for joint venture] all but one of the defendants are acquitted of the charge, a conviction of the remaining defendant

---

[6]In cataloguing the erosion of the rule that acquittal of all other coconspirators compels reversal of a single convicted conspirator under the rule of consistency, the court in *United States* v. *Crayton*, 357 F.3d 560, 565-566 (6th Cir.), cert. denied, 542 U.S. 910 (2004), reviews the United States Court of Appeals cases that have abandoned the rule of consistency:

> "See *United States* v. *Bucuvalas*, 909 F.2d 593, 597 (1st Cir. 1990); *United States* v. *Thomas*, 900 F.2d 37, 40 (4th Cir. 1990); *United States* v. *Zuniga-Salinas*, 952 F.2d 876, 877-[8]79 (5th Cir. 1992) (en banc); *United States* v. *Valles-Valencia*, 823 F.2d 381, 381-[3]82 (9th Cir. 1987); *United States* v. *Andrews*, 850 F.2d 1557, 1560-[15]62 (11th Cir. 1988) (en banc). Other circuits have recognized that the rule of consistency does not survive [*United States* v. *Powell, supra*], without actually so holding. *United States* v. *Dakins*, 872 F.2d 1061, 1065 (D.C. Cir. 1989) (*Powell* 'cast[s] doubt' upon rule of consistency); *United States* v. *Mancari*, 875 F.2d 103, 104 (7th Cir. 1989) (rejection of rule of consistency 'makes good sense in light of *Powell*'); *Gov't of the Virgin Islands* v. *Hoheb*, 777 F.2d 138, 142 n.6 (3d Cir. 1985) (rule of consistency 'may be a vestige of the past'). See also Chad W. Coulter, Comment, The Unnecessary Rule of Consistency in Conspiracy Trials, 135 U. Pa. L. Rev. 223 (1986). The only contrary circuit opinion appears to be that of the Tenth Circuit. In *United States* v. *Suntar Roofing, Inc.*, 897 F.2d 469 (10th Cir. 1990), that court . . . suggested that the rule of consistency may have continuing vitality."

[7]It is of interest to note that, while there has been a virtually unrelenting erosion of the rule of consistency in conspiracy law, which would be similarly applicable to joint venture law, in other jurisdictions, there is theoretically a potential difference when it is applied to the crime of aggravated rape by joint venture under G. L. c. 265, § 22(*a*). That is: the crime of aggravated rape is a substantive offense in which the joint venture is an element of proof of the substantive offense itself. That may distinguish trial on this substantive aggravated rape offense from trials in which joint venture is a *theory of proof, rather than an element of proof*, and may present a twist in the analysis of the rule of consistency. As was suggested in *Getsy* v. *Mitchell*, 456 F.3d 575, 588 n.4 (6th Cir. 2006), vacated en banc on other grounds, 495 F.3d 295 (6th Cir. 2007), the rule of consistency may still apply to capital cases "or *to cases involving substantive crimes*, such as adultery, incest, bigamy, dueling, or murder for hire, *that necessarily involve at least two participants. . . . The law has excused inconsistent verdicts in run-of-the-mill conspiracy cases, but it has not excused inconsistent verdicts on a substantive offense requiring the participation of two people*" (emphasis added).

must be set aside." However, further formulation of Massachusetts criminal law on such issues — perhaps to address inconsistent verdicts in a joint venture trial for aggravated rape, and perhaps to review whether the rule of consistency should be abandoned in a consolidated trial such as this one, where only one codefendant joint venturer charged with aggravated rape by joint venture is found guilty while the alleged codefendant joint venturer is acquitted — rests with the Supreme Judicial Court.

Based on the present state of Massachusetts law and existing precedent, I respectfully dissent from the affirmance of the defendant's conviction of aggravated rape.