COMMONWEALTH *vs.* KEVIN G. MEDEIROS.

Plymouth. November 3, 2009. - February 11, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Rape. Joint Enterprise. Evidence,* Joint enterprise, Medical record. *Practice, Criminal,* Verdict, Assistance of counsel. *Constitutional Law,* Assistance of counsel.

At the trial of indictments charging the defendant with, inter alia, aggravated rape based on a theory of joint venture as the aggravating factor, a codefendant's acquittal of the same charge at the same trial required reversal of the defendant's conviction, where the crime charged required a united act of two or more individuals, and the codefendant's acquittal essentially reflected the failure of the Commonwealth to prove that element of the crime or, at a minimum, a misunderstanding on the part of the jury as to the necessity of such proof. [56-60]

At the trial of indictments charging the defendant with, inter alia, aggravated rape, defense counsel's choice not to seek redactions of certain portions of the victim's medical records was not manifestly unreasonable, where the information at issue either was consistent with defense strategy or, if prejudicial, was limited in its effect [61-63]; further, counsel's failure to object to the victim's testimony, elicited by the prosecutor, that was allegedly self-corroborative did not constitute ineffective assistance, where such an objection would have run counter to defense strategy [63-64]; finally, defense counsel's decisions, in combination, did not give rise to a substantial risk of a miscarriage of justice [64].

INDICTMENTS found and returned in the Superior Court Department on September 19, 2003.

The cases were tried before *Linda E. Giles,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Stacey Gross Marmor* for the defendant.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

CORDY, J. Kevin G. Medeiros (defendant) and Walter Watson, Jr., were tried together before a jury for crimes arising out of a young woman's allegations of rape. They both were charged

with aggravated rape, G. L. c. 265, § 22 (a); rape of a child under the age of sixteen with force, G. L. c. 265, § 22A; indecent assault and battery on a person fourteen years of age or over, G. L. c. 265, § 13H; and assault and battery, G. L. c. 265, § 13A. After the close of the evidence, the defendant and Watson prevailed on motions for required findings of not guilty on the charge of indecent assault and battery, leaving the jury to consider the remaining charges. The jury convicted Watson of assault and battery only. The jury convicted the defendant of all three charges. The defendant was sentenced to from seven to nine years in State prison for aggravated rape. He received concurrent five-year probationary sentences for rape of a child with force and assault and battery. On appeal, the Appeals Court affirmed the defendant's convictions. See *Commonwealth* v. *Medeiros*, 73 Mass. App. Ct. 571 (2009).

We granted the defendant's application for further appellate review principally to consider whether the defendant's conviction of aggravated rape must be reversed because Watson, the sole other participant in the rape, was acquitted of the same charge at the same trial. Because the charge of aggravated rape rested on the act's commission by "joint enterprise," G. L. c. 265, § 22 (a),[1] and because the sole alleged perpetrators were tried together, we conclude that the jury's verdicts were fatally inconsistent. We also consider the defendant's claims of ineffective assistance of counsel and conclude that the defendant's counsel was not ineffective. As a result, we reverse the defendant's conviction of aggravated rape and enter judgment for the defendant on that charge. We remand the remaining convictions to the Superior Court for resentencing.

*Trial.* The Commonwealth called only one witness, the victim. She testified to the following sequence of events. On July 1, 2003, the defendant and Watson arrived at the Knight Look Campground in Rochester, where the victim lived with her

[1]The relevant language of G. L. c. 265, § 22 (a), states:

> "Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury and if . . . such sexual intercourse or unnatural sexual intercourse . . . is committed by a joint enterprise . . . shall be punished by imprisonment in the state prison for life or for any term of years."

mother and stepfather. At the time, the victim was fifteen years of age. The victim knew the two men, and the three of them spent the evening meandering around the campground, eventually pausing in front of a vacant tent so the victim could tie her shoe. When she stood up, Watson and the defendant pulled her into the tent. Inside, the three spoke for a few minutes — the victim testified that she thought Watson and the defendant were joking around — and then the defendant began undressing the victim against her will. Watson restrained the victim on a mattress while the defendant raped her vaginally. Watson left after approximately twenty to thirty minutes, but the defendant remained with the victim. After two hours, the defendant forced the victim to perform oral sex on him for approximately twenty minutes.

After the defendant left, the victim returned home to her campsite at about 3 A.M. She did not awaken her mother or stepfather because she feared her mother would be angry with her. The next day, her mother announced that the victim had been staying out too late and that she would be sent to spend the rest of the summer with her father in New Hampshire. The mother went to telephone him. The mother then heard a rumor concerning the victim and the defendant, and she confronted the victim about it when she returned. At that point, the victim told her mother that she had been raped. The police arrived and the victim was transported to a hospital. There, the victim was examined by a physician and a sexual assault nurse examiner (SANE nurse).

The medical records of the victim's hospital care were admitted in evidence and submitted to the jury in the form of an exhibit. Before their admission, defense counsel attempted to impeach the victim with the SANE nurse's report of her interview and examination. The judge sustained the Commonwealth's objection that it was impermissible to impeach the victim with the statement of someone else. It was then suggested by defense counsel that the medical records themselves could be introduced in evidence. The judge noted that the records had not been subpoenaed in accord with the requirements of either G. L. c. 233, § 79, or G. L. c. 233, § 79G,[2] but as "an act of discretion," she agreed to admit

---

[2]In relevant part, G. L. c. 233, § 79, provides:

"Records kept by hospitals . . . may be admitted by the court, in its

them at defense counsel's request in spite of this technical short-coming.[3] They were admitted in their entirety, without redaction.

The medical records indicated that the victim told the SANE nurse that she had been raped vaginally but not orally.[4] The records also revealed that there were no signs of physical trauma or other physical evidence of rape other than some tenderness of the victim's thighs. On one of the twenty-three pages of medical forms contained in the records, under the line "Clinical Impression," an examining physician wrote the words "Sexual Assault" without elaboration. Because the records were not redacted, the jury could have seen the treating physician's clinical impression, although this was neither pointed out nor argued by the prosecutor.

discretion, as evidence in the courts of the commonwealth so far as such records relate to the treatment and medical history of such cases and the court may, in its discretion, admit copies of such records, *if certified by the persons in custody thereof to be true and complete; but nothing therein contained shall be admissible as evidence which has reference to the question of liability*" (emphasis added).

In relevant part, G. L. c. 233, § 79G, provides:

"In any proceeding commenced in any court, . . . an itemized bill and reports, including hospital medical records, . . . shall be admissible as evidence of . . . the diagnosis of said physician . . . , the prognosis of such physician . . . , the opinion of such physician . . . ; *provided, however, that written notice of the intention to offer such bill or report as such evidence, together with a copy thereof, has been given to the opposing party or parties, or to his or their attorneys, by mailing the same by certified mail, return receipt requested, not less than ten days before the introduction of same into evidence, and that an affidavit of such notice and the return receipt is filed with the clerk of the court, agency or commission forthwith after said receipt has been returned*" (emphasis added).

[3]The judge stated:

"Technically you should have brought them in pursuant to the statute. As an act of discretion, we can mark a copy, and I am going to let them come in. I think the defense may have a little mistaken belief that they were coming in. . . . I don't want to prejudice the defense just by this sort of technicality . . . ."

[4]This is reflected in the records by a series of checks made by the sexual assault nurse examiner (SANE nurse) on "Form 2 information pertaining to assault" (Form 2). The box for penetration of the mouth by penis was left unchecked. There is also no mention of oral sex in the narrative patient report of incident, prepared by the SANE nurse based on the victim's description of the sexual assault.

The jury also could have read the summary of the victim's state-
ment written by the SANE nurse that mentioned the defendant by
name as one of the victim's assailants.

The theory of the defense was that the victim had fabricated
her story to scuttle her mother's plan to send her to New Hamp-
shire. In support of that theory, defense counsel elicited testimony
from the victim that she did not want to go to New Hampshire
and that she perceived her mother's decision as a punishment.
Defense counsel also pointed out that the victim did not cry out
for help despite the fact that the tent in which she claimed to
have been raped was in the immediate vicinity of other camp-
ground residents' tents and campers, and that she did not seek
assistance in any way until she was confronted by her mother.
Additionally, defense counsel underscored, both on cross-
examination and in closing argument, the dearth of evidence of
physical trauma, and the inconsistencies between the lack of such
evidence in the medical records and the victim's testimony that
the rape lasted for over two hours. Finally, defense counsel empha-
sized that the victim's story had changed over time, that her
medical records were not consistent with the story she had just
told the jury, and that she had not mentioned the defendant forc-
ing her to have oral sex with him until she was interviewed by
the prosecutor in preparation for trial three years after the in-
cident.[5]

We begin by addressing the defendant's conviction of aggra-
vated rape, and then proceed to consider his claims of ineffective
assistance of counsel.

*Discussion. 1. Inconsistent verdicts.* The defendant argues
that his conviction of aggravated rape by reason of joint enter-
prise must be reversed because the jury simultaneously acquitted
the sole other member of the joint enterprise. While his argument
has the benefit of logic — how can one commit a joint enterprise
alone? — the law of inconsistent verdicts is not so straightforward,
and the "breed of 'inconsistent' verdicts which is not allowed to

[5]The defense also called a witness, Deborah Houle, who called into question
whether the victim had even seen the defendant on the night in question. Houle
testified that the victim had spent the evening at Houle's campsite with some
other girls until approximately 2:30 a.m., after which time the victim left with a
man named Brandon. Houle testified that she had not seen the victim with the
defendant that night.

stand under our cases is small indeed." *Commonwealth* v. *Scott,* 355 Mass. 471, 475 (1969).

"[T]he rule is well established in criminal cases that mere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury." *Id.* See *United States* v. *Powell,* 469 U.S. 57, 64-66 (1984); *Dunn* v. *United States,* 284 U.S. 390, 393-394 (1932); *Commonwealth* v. *Gonzalez,* 452 Mass. 142, 150-152 (2008); *Commonwealth* v. *Cerveny,* 387 Mass. 280, 285-286 (1982). There are two principal reasons for this rule. The first is that each charge represents a separate indictment that may stand or fall on its own. See *Dunn* v. *United States, supra* at 393; *Commonwealth* v. *Scott, supra.* The second is our reluctance to subject a jury's verdicts to logical scrutiny: there are "any number of factors having nothing to do with the defendant's actual guilt" that can drive an acquittal. See *Commonwealth* v. *Cerveny, supra* at 285. For example, a not guilty verdict "may result from . . . compassion or prejudice," yet the prosecution is "powerless to seek a judgment notwithstanding the verdict [of acquittal] or a new trial on the ground that the verdict is against the weight of the evidence." *Id.*

We have applied this rule in a wide variety of circumstances where an apparent inconsistency of verdicts has been argued as grounds for reversal. For example, we have declined to upset a conviction of armed robbery where the defendant was acquitted of carrying the shotgun that the evidence at trial suggested he carried during the robbery. See *Commonwealth* v. *Hamilton,* 411 Mass. 313, 323-324 (1991). Similarly, we have not required reversal where defendants are tried together for their alleged involvement in a single crime, and one is convicted and the other acquitted, see *Commonwealth* v. *Connearney,* 359 Mass. 200, 202-203 (1971); *Commonwealth* v. *Clements,* 51 Mass. App. Ct. 508, 523 (2001), *S.C.,* 436 Mass. 190 (2002), or where they are tried separately and different verdicts are returned. See *Commonwealth* v. *Jones,* 403 Mass. 279, 289-290 (1988); *Commonwealth* v. *Cerveny, supra.* In reviewing the convictions in such cases, we decline to disturb the jury's guilty verdicts provided there is suf-

ficient evidence to support them. See *Commonwealth* v. *Hamilton, supra* at 324; *Commonwealth* v. *Jones, supra.*[6]

In limited circumstances, however, we are sufficiently troubled by verdicts that involve inconsistent determinations of guilt as to require judicial intervention. First, we will set aside guilty verdicts that are "impossible at law." *Commonwealth* v. *Sherry,* 386 Mass. 682, 698 (1982), and cases cited. Such verdicts involve convictions of crimes that are mutually exclusive. For example, in *Commonwealth* v. *Carson,* 349 Mass. 430, 434-436 (1965), the defendant was convicted of larceny of stock as well as larceny of the money garnered from the sale of that stock. Similarly, in *Commonwealth* v. *Haskins,* 128 Mass. 60, 61 (1880), the defendant was convicted of larceny of goods and receipt of the same goods.[7] "[A]lthough, as a legal effect of a conviction upon each count it cannot be said strictly that it is an acquittal upon the other, yet the finding of guilty upon both is inconsistent in law, and is conclusive of a mistrial." *Id.*

We have also reversed convictions in cases of a single trial for conspiracy in which all but one of the alleged conspirators are acquitted of the charge. See *Commonwealth* v. *Cerveny, supra*; *Commonwealth* v. *Benesch,* 290 Mass. 125, 135-136 (1935). See also *Commonwealth* v. *Slate,* 11 Gray 60, 63 (1858) (discussing crimes of conspiracy and riot). The rule that we have applied in such cases is based on the rationale that "one cannot be a con-

---

[6]While this approach has been criticized because it can be unsettling when a jury return inconsistent verdicts for "compound crimes" such as possession of a firearm and armed robbery, the tide of the law flows against this objection. See Muller, The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts, 111 Harv. L. Rev. 771, 778-779, 787-789, 794 (1998). The United States Supreme Court has long condoned such inconsistencies. See *United States* v. *Powell,* 469 U.S. 57, 62-69 (1984); *Dunn* v. *United States,* 284 U.S. 390, 393 (1932). See also *United States* v. *Crayton,* 357 F.3d 560, 565-566 (6th Cir.), cert. denied, 542 U.S. 910 (2004) (reviewing United States Court of Appeals cases that tolerate inconsistent jury verdicts).

[7]As stated in *Commonwealth* v. *Haskins,* 128 Mass. 60, 61 (1880):

"By [the] record it appears that there had been the larceny of a cow, and but one larceny of that cow. The defendants were charged in one count of the indictment with such larceny, and in the second count with having received her knowing her to have been thus stolen. It is certain that the defendants could not be guilty upon both counts, because in law the guilty receiver of stolen goods cannot himself be the thief; nor can the thief be guilty of a crime of receiving stolen goods which he himself had stolen."

spirator alone." *Commonwealth* v. *Benesch, supra* at 135. See Muller, The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts, 111 Harv. L. Rev. 771, 780 (1998). However, the rationale for our application of what has been termed the "rule of consistency," Annot., Prosecution or Conviction of One Conspirator as Affected by Disposition of Case Against Coconspirators, 19 A.L.R.4th 192, 204-205 (1983), in conspiracy trials is properly extended to other circumstances in which similar elements are present. Specifically, those elements are a crime charged that by its nature requires a combination of individuals; a single trial of all the participants in that crime; and an acquittal of all but one of the participants.

Conspiracy is the textbook crime for which a combination of individuals is necessary. See *Commonwealth* v. *Benesch, supra.* The conspiracy is complete at the moment an agreement is made, that is, on the meeting of at least two minds. See *Commonwealth* v. *Frazier*, 410 Mass. 235, 245 (1991). In the past, the crime of riot also required multiple individuals.[8] See *Commonwealth* v. *Slate, supra.* In either case, an element of the crime, indeed the very essence of it, requires "the united act of two or more individuals to constitute an offence in either." *Id.* There is no conspiracy without conspirators, and there is no riot without rioters.

Moreover, when a jury return inconsistent verdicts in a single trial for crimes requiring a "united act," the reasons for leaving jury decisions undisturbed become more attenuated. The possibility that the jury merely showed compassion to all but one defendant is counteracted by the concern that the jury may have fundamentally misunderstood the nature of the crime charged and convicted the defendant even though the Commonwealth did not prove an essential element of the crime beyond a reasonable doubt, namely, the concerted action of at least two people.[9] For these reasons, where a single trial for a crime that requires a united act results in the acquittal of all but one of the defendants necessary to that act, we continue to apply the rule of consistency.

[8]Under English law, the crime of riot required at least three participants. Muller, *supra* at 779, citing *Harison* v. *Errington*, 79 Eng. Rep. 1292, 1293 (K.B. 1627).

[9]Such concerns are not present where inconsistent verdicts are rendered at separate trials. See *Commonwealth* v. *Cerveny*, 387 Mass. 280, 285 (1982). No inference of confusion or insufficient proof is available in those circumstances.

We turn now to the crime in this case, aggravated rape. As we said in *Commonwealth* v. *McCourt*, 438 Mass. 486, 495 (2003), the Legislature has deemed that rape committed with certain aggravating factors warrants a more severe punishment. One of those factors, and the only one present in this case, is the commission of rape by "joint enterprise." G. L. c. 265, § 22 (*a*). The question is whether aggravated rape by reason of joint enterprise is a crime that requires "the united act of two or more individuals to constitute an offence in either." *Commonwealth* v. *Slate*, *supra*. We conclude that it does. The Legislature has included joint enterprise as a statutory element of aggravated rape. Therefore, the Commonwealth must prove beyond a reasonable doubt that the rape was committed by at least two people just as it must prove an agreement between at least two coconspirators. The only people alleged to have acted jointly to commit the rape were the defendant and Watson. Watson's acquittal essentially reflects the failure of the Commonwealth to prove the united act element of the crime or, at a minimum, a misunderstanding on the part of the jury as to the necessity of such proof. Therefore, consistent with our long-standing but limited rule of consistency, we hold that the inconsistent verdicts in this case require the reversal of the defendant's conviction of aggravated rape.[10,11] Accordingly, we enter judgment for the defendant on that charge.

---

[10]Commission of rape by "joint enterprise" where the "joint enterprise" is an element of the crime is distinct from general liability as a joint venturer. As we explained in *Commonwealth* v. *Zanetti*, 454 Mass. 449, 466-467 (2009), joint venture is not a question of joint guilt, but rather a way of attaching individual liability. It matters only whether a defendant participated in the commission of a crime, either alone or with another. That is, although it is true that a joint venture instruction is only proper when there is evidence that multiple individuals were involved in the crime, that instruction does not change the nature of the underlying offense. We made this clear when we said that convictions should be reviewed to determine "whether the evidence is sufficient to permit a rational juror to conclude beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, with the intent required to commit the crime, rather than examine the sufficiency of the evidence separately as to principal and joint venture liability." *Id.* at 468. Thus, a person convicted of murder because he participated as a joint venturer is a murderer, not a murderer by reason of joint venture; a principal and a joint venturer (or an accomplice, aider, or abettor) commit the same crime.

[11]The Commonwealth argues that the fact that Walter Watson was convicted of assault and battery should alter this result because the jury did find that there was a joint enterprise. This is wrong. Preliminarily, this conclusion is not supported by what happened at trial. The jury were instructed on assault and

2. *Ineffective assistance of counsel.* The defendant argues that he was deprived of his right to effective assistance of counsel. He first alleges that his counsel's failure properly to subpoena the victim's medical records deprived him of the opportunity to redact from the records prejudicial information. Second, the defendant argues that his counsel failed to object to the victim's self-corroborative testimony. Finally, he alleges that the combination of the unredacted medical records and the self-corroborative testimony constituted ineffective assistance of counsel.

We examine the specific circumstances of the case to discern whether there has been "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). This is a practical, pragmatic inquiry. See *id.* at 98-99.

As a preliminary matter, we note that the defendant raises his ineffective assistance arguments for the first time on direct appeal instead of in a motion for a new trial. We disfavor this approach because it hobbles our review. See *Commonwealth* v. *Zinser*, 446 Mass. 807, 809 n.2, 811 (2006). As a consequence, we will reverse the defendant's convictions only if the ineffectiveness "appears indisputably on the trial record." *Id.* at 811, quoting *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994).

a. *Medical records.* The defendant adheres to a mistaken interpretation of what happened at his trial with regard to the introduction of the victim's medical records. Although trial counsel admittedly failed to subpoena the victim's medical records pursuant to G. L. c. 233, §§ 79 and 79G, nothing in the trial record indicates that the judge treated counsel's failure to comply with these statutes as sacrificing the opportunity to redact the record.

---

battery and told that they should consider not just whether the Commonwealth proved that Watson held the victim down on the mattress, but also whether he grabbed her by the arm and pulled her into the tent. The rape occurred sometime after the three individuals were in the tent and the jury could have found that Watson assaulted and battered the victim *separately from the rape*. Moreover, the aggravated rape statute requires that the rape itself be committed by joint enterprise. The crimes of assault and battery and aggravated rape are distinct.

Therefore, it is not counsel's failure to subpoena that lies at the heart of the defendant's argument, but rather, counsel's choice not to seek redactions.

"Counsel's decisions will not be viewed as constituting ineffective assistance unless they are 'manifestly unreasonable.' " *Commonwealth* v. *Dwyer*, 448 Mass. 122, 137 (2006), quoting *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). The defendant contends that his counsel's decisions were manifestly unreasonable because the medical records included information that was prejudicial to his case, specifically, the SANE nurse's summary of the victim's statement that implicated the defendant by name, and the treating physician's clinical impression of "Sexual Assault." The defendant relies on *Commonwealth* v. *Dwyer*, *supra*, where we held that counsel was ineffective when he acquiesced to the admission of unredacted medical records that included inadmissible hearsay and statements identifying the defendant as the alleged perpetrator of the sexual abuse of the victim. However, that case is not controlling here.

We begin by noting that the SANE nurse's summary of the victim's statement was not prejudicial to the defendant's case. It was never the defense strategy to deny that the victim had reported being raped by the defendant, nor was it to argue that the victim had been raped by another person. Rather, the defense was that the victim had fabricated the entire incident. Thus, although the medical records included several notes that the victim reported being raped, as well as the SANE nurse's summary that included references to the defendant, these facts were conceded by the defense from the beginning. This was not an unreasonable strategy, much less a manifestly unreasonable one.

As for the treating physician's clinical impression of sexual assault, the defendant is correct that this information would likely have been redacted had counsel requested it. See *id.* Although the prosecutor never directed the jury's attention to this or any other portion of the medical records, the jury might have interpreted that two-word notation as a diagnosis. Such an interpretation would have been prejudicial. Nevertheless, any prejudice was limited by defense counsel's extensive use of the rest of the records to question whether the victim had been raped at all. The jury were drawn to the portion of the records that showed almost

no physical trauma, and the significant inconsistencies between those records and the victim's testimony. Thus, while it may have been better practice for counsel to have asked the judge for permission to redact one element of the medical records, we cannot say that counsel's actions reached the level of "serious incompetency, inefficiency, or inattention." See *Commonwealth* v. *Saferian*, *supra* at 96.

b. *Failure to object.* The defendant next argues that his counsel was ineffective for failing to object to the victim's testimony, elicited by the prosecutor, that he argues was self-corroborative. He focuses on the following exchange:

> THE PROSECUTOR: "When you told your mother about what happened, what did you say?"
>
> THE VICTIM: "What did I say?"
>
> THE PROSECUTOR: "Yes."
>
> THE VICTIM: "I told her exactly what happened."
>
> THE PROSECUTOR: "As a result, the police were called?"
>
> THE VICTIM: "Yes."
>
> THE PROSECUTOR: "Did they come to the campground?"
>
> THE VICTIM: "Yes."
>
> THE PROSECUTOR: "Did you speak with them?"
>
> THE VICTIM: "Yes."
>
> THE PROSECUTOR: "And later on that evening, in fact, did they ask you to go someplace else?"
>
> THE VICTIM: "They had me go to the hospital."

The defendant argues, in effect, that his counsel would have been successful had he objected to this testimony because the victim's testimony was "essentially the same as permitting [the police] to testify" in violation of the first complaint doctrine.

*Commonwealth* v. *Stuckich*, 450 Mass. 449, 457 (2008). Assuming, without deciding, that the victim's testimony went too far, we emphasize that we view this case through a different lens than in the *Stuckich* case. As we have said already, our threshold inquiry concerns the performance of counsel. See *Commonwealth* v. *Saferian, supra.*

Whatever self-corroboration the victim's testimony supplied was consistent with the defense. At trial, defense counsel highlighted that the victim did not contact the police herself, relying on her mother to do so and only after her mother threatened to send her to New Hampshire. On cross-examination, defense counsel attacked the victim's credibility on these grounds. Similarly, defense counsel elicited testimony from the victim that she did not tell the police that she had been raped orally. Moreover, the defendant's witness, Deborah Houle, revealed essentially the same facts as the victim did, testifying that she saw the police and an ambulance arrive and that she saw the defendant being arrested.

What emerges from the trial record is a defense strategy based on the theory that the victim told her mother, the police, and hospital staff that she had been raped only as a means to avoid being sent to stay with her father for the remainder of the summer. Any "imprimatur of official belief in the [victim]" caused by her testifying that the police were contacted and that they asked her to go to a hospital was a component of the defense counsel's core argument: the victim lied to everyone. See *Commonwealth* v. *Stuckich, supra.* Objecting to what the defendant now calls self-corroborative testimony would have run counter to this strategy. Defense counsel's performance was not ineffective.

c. *Cumulative ineffectiveness.* Finally, the defendant argues that the combination of defense counsel's decisions regarding the victim's medical records and testimony gives rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Mazzone*, 55 Mass. App. Ct. 345, 352-353 (2002); *Commonwealth* v. *Whitlock*, 39 Mass. App. Ct. 514, 517-518 (1995). No such risk emerges from the trial record. See *Commonwealth* v. *Zinser*, 446 Mass. 807, 811 (2006).

*Conclusion.* The defendant's convictions of assault and battery and rape of a child by force are affirmed. His conviction of

aggravated rape is reversed, and judgment is entered in his favor. We remand the defendant's remaining convictions to the Superior Court for resentencing.

*So ordered.*