NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-572

COMMONWEALTH

vs.

JACOB M. HEBERT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A jury convicted the defendant and the codefendant, John Jones, of two counts each of aggravated rape (by joint enterprise) under G. L. c. 265, § 22 (a). The defendant filed a postconviction motion that raised the following claims for the first time: (1) the prosecution failed to record instructions provided to the grand jury; (2) the prosecutor misled the grand jury through an erroneous instruction; (3) the jury likely convicted him of uncharged crimes because the evidence before the grand jury and at trial showed multiple acts of penetration, yet no particular acts were specified in the indictments; and (4) the trial judge provided erroneous joint venture instructions. The Superior Court judge who presided over the trial denied the motion. In a consolidated appeal from his

convictions and from the order denying the motion, the defendant repeats these claims. We affirm.

Discussion. According to the Commonwealth's case, on January 10, 2017, the defendant joined with Jones in a prolonged sexual assault of the victim. The defendant and the victim previously knew each other and had an ongoing relationship with a sexual component. The defense contended that the three individuals had consensual sex on the day in question. At the conclusion of the trial, the jury returned guilty verdicts against the defendant and Jones for aggravated rape (vaginally) and aggravated rape (anally). The jury acquitted the defendant and Jones of aggravated rape (orally).

The defendant raised the present claims for the first time in his postconviction motion. We discern no abuse of discretion in the denial of the defendant's postconviction motion and discern no basis to disturb the judgments. We address his several claims in turn.

1. Grand jury recording requirement. Contrary to the defendant's first claim, the Commonwealth did not violate the recording requirement for grand jury presentations. On January 6, 2017, the Supreme Judicial Court released the case of Commonwealth v. Grassie, 476 Mass. 202 (2017), which required that "the entire grand jury proceeding . . . be recorded in a manner that permits reproduction and transcription." Id. at

2

220.  The court indicated that the recording must include "any legal instructions provided to the grand jury by a judge or a prosecutor in connection with the proceeding." Id.  The court further instructed that "[t]he recording requirement shall apply beginning with each newly constituted grand jury including the Statewide grand jury, that is empaneled and sworn following the issuance of the rescript in this case" (emphasis added).  Id.  A "rescript" is "the order, direction, or mandate of the appellate court disposing of the appeal."  Foxworth v. St. Amand, 457 Mass. 200, 205 n.7 (2010), quoting Mass. R. A. P. 1 (c), 365 Mass. 844 (1974).  When an appellate court renders such a rescript, the court clerk notifies the parties and then "issues the rescript to the lower court twenty-eight days after the date of the rescript" (emphasis added).  Foxworth, supra at 205, citing Mass. R. A. P. 23, as appearing in 367 Mass. 921 (1975).  In the present case, on January 9, 2017, just three days after the Grassie decision, the Superior Court empaneled the grand jury -- long before the usual twenty-eight day period for a rescript to issue.  Given this sequence of events, at the time of the presentation of this case to the empaneled grand jury, the recording requirement had not yet become operative,[1] and the Commonwealth lacked any obligation to record instructions.

_____

[1] We need not decide precisely when the recording requirement became operative after the grand jury presentation here --

3

2.  Impairment of grand jury process.  We also discern no impairment of the grand jury proceedings.  The defendant contends that the prosecutor "affirmatively misled" the grand jury through an erroneous instruction on joint enterprise. "[T]he heavy burden to show impairment of the grand jury proceeding is borne by the defendant."  Commonwealth v. Stevenson, 474 Mass. 372, 376 (2016).  To sustain that burden, the defense must show that the prosecution knowingly deceived the grand jury about a significant issue "with the intention of obtaining an indictment."  Commonwealth v. Mayfield, 398 Mass. 615, 621 (1986).  In support of his claim, the defendant asserts that the "prosecutor told the grand jury that a joint-enterprise rape occurs even if the defendant acts alone."  This assertion is not supported by the record.

The record, consisting of an affidavit from the prosecutor, shows that the prosecutor lacked a specific memory of what he told the grand jurors.  During the grand jury presentation, he provided preliminary background information, referred to an outline, and informed the grand jury about specific acts of penetration that pertained to each indictment.  He averred, in part:

---

whether twenty-eight days after the Grassie decision, or when the Grassie rescript actually issued on June 14, 2019, or at some other time.

4

> "Prior to going on the record with the stenographer, I provided preliminary background information to the grand jury, as was my customary practice during that time. . . . I do not have a specific memory of the content of the introductory information. . . . Attached is an outline that I prepared for that presentation. . . . I am confident that I referred to the outline during my introduction and that I informed the grand jury that each of the three aggravated rape indictments referred to a different form of penetration, as set out in the outline."

The outline attached to the affidavit consisted of five typed pages. One notation included the category "elements" that contained a subcategory of "joint venture" and a further subcategory indicating, "Defendant knowingly participated in the commission of the crime charged, alone or with others, with the intention required for that offense." Contrary to the defendant's assertion, the record does not establish that the prosecutor read or otherwise conveyed this portion of the outline to the grand jury. The affidavit shows that the prosecutor "referred" to the outline and "informed" the grand jurors about the acts of penetration linked to each indictment. He did not attest to providing any instruction on joint venture. Notably, the outline contains other information that would not be provided to the grand jury, including references to the penalties for the offenses. A mere reference on a prosecutor's outline does not equate with conveying information to the grand jury. Based upon this record, the defendant did not meet his

5

"heavy burden" of showing impairment of the grand jury proceedings. Stevenson, 474 Mass. at 376.

Even if the prosecutor suggested to grand jurors that the crimes could be committed "alone," we discern no impairment of the grand jury proceedings. The victim's testimony before the grand jury showed that the defendant and Jones acted together. They entered the house together at about 2 A.M., drank and talked together in the living room, repeatedly raped the victim together in the living room, filmed a brief portion of the rape together, watched the videotape together, and left together at about 5 A.M. This testimony supported the indictments for rape "committed by a joint enterprise," G. L. c. 265, § 22 (a), and was quite unlikely to have led to indicting the defendant acting "alone." We also note the longstanding "practice of subjecting grand jury proceedings to only limited judicial review." Commonwealth v. Noble, 429 Mass. 44, 48 (1999). Generally, "[t]he Commonwealth is not required to inform a grand jury of the elements of the offense." Id. When instructions are provided, the grand jury "need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law." Id. at 47 n.3, quoting People v. Calbud, Inc., 49 N.Y.2d 389, 394 (1980).

During the argument before the panel in this case, the defendant asserted that we cannot consider the prosecutor's

6

affidavit on this issue.  The defendant claimed that the record must be parsed and aligned with the various postconviction motions that he filed.[2]  In particular, the defendant argued that the prosecutor's affidavit, filed in response to an "Emergency Motion for Stay of Execution of Sentence Pending Appeal," cannot be considered in connection with the different postconviction "Motion to Vacate Convictions and to Dismiss Indictments," in which the defendant claimed that the prosecutor misled the grand jury.  We disagree.  The affidavit is one of the "original papers and exhibits on file" in the Berkshire Superior Court and constitutes part of the record in this matter.  See Mass. R. A. P. 8 (a), as amended, 378 Mass. 932 (1979).  "[W]e decide the case on this record" that was before the Superior Court.  Pilch v. Ware, 8 Mass. App. Ct. 779, 780 (1979).  See Commonwealth v. Morse, 50 Mass. App. Ct. 582, 584 n.3 (2000) (rejecting defense claim that appellate review of record was limited where affidavit was filed in support of motion to revise and revoke

---

[2] The defendant filed an "Emergency Motion for Stay of Execution of Sentence Pending Appeal" (and supporting memorandum) on or about April 28, 2020.  As grounds for that motion, the defendant claimed, among other things, that the indictments failed to delineate the forms of penetration.  On May 13, 2020, the Commonwealth filed an affidavit of the prosecutor who presented the case to the grand jury in support of its opposition to that motion.  On July 2, 2021, the defendant filed a "Motion to Vacate Convictions and to Dismiss Indictments" (and supporting memorandum).  In a memorandum of decision and order dated May 31, 2022, the Superior Court rejected all the defense claims.

and was not related to probation revocation).  We also note that the judge hearing the postconviction motion also relied upon the affidavit, and the defendant bases his claim of misleading the grand jury upon the very affidavit that he claims we cannot consider.

We also discern no impropriety in the filing of the prosecutor's affidavit.  A party may file affidavits in connection with postconviction motions.  Mass. R. Crim. P. 30 (c), as appearing in 435 Mass. 1501 (2001).  "The primary purpose of (rule 30 [c] [3]) is to encourage the disposition of post conviction motions upon affidavit."  Commonwealth v. Stewart, 383 Mass. 253, 260 (1981), quoting Reporter's Notes to Mass. R. Crim. P. 30, at 484 (1979).  The judge here credited the affidavit and concluded that the prosecutor provided erroneous joint venture instructions to the grand jury.  For reasons previously discussed, we disagree with part of the judge's conclusion because the affidavit does not state that the prosecutor provided any instructions to the grand jury relative to joint venture.  "A judge who has seen and heard the witnesses is in a better position to determine their credibility than is a court which is confined to the printed record.  The situation is different in regard to findings made upon written evidence.  In that respect this court stands in the same position as did the trial judge, and reaches its own conclusion unaffected by the

8

findings made by the trial judge."  Commonwealth v. Novo, 442 Mass. 262, 266 (2004), quoting Berry v. Kyes, 304 Mass. 56, 57 (1939).  See Commonwealth v. Tremblay, 480 Mass. 645, 654-655 (2018).

3.  Single indictment for multiple acts.  We also disagree with the defendant's contention that he may have been convicted of an uncharged crime.  He argues that because the jury and grand jury heard evidence about multiple acts of penetration of the victim, and the indictments in his view charged only three distinct, separate penetrative acts, there existed "a 50% chance [or greater] that the defendant was convicted of an uncharged crime."  Several factors obviated any such risk.  First, as credited by the judge, the prosecutor asserted in his affidavit that he "informed" the grand jurors that "each of the three aggravated rape indictments referred to a different form of penetration."[3]  Second, the judge instructed the jurors, without objection, that they "must unanimously agree on the specific

_____

[3] The defendant argues, without citation to authority, that "because the indictments that issued do not actually reflect such a grouping, and because the only evidence of such intent is the Commonwealth's self-serving report of an unrecorded statement to the grand jury, such argument does not save the otherwise defective indictment from duplicity."  We decline to consider this further challenge to consideration of the affidavit, as the defendant's "briefing on this issue does not rise to the level of appellate argument.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019)." Commonwealth v. Beverly, 485 Mass. 1, 16 (2020).

9

rape (vaginal, oral, anal) for that particular indictment." He added, "[i]n order to satisfy this element all of the jurors must agree on at least the specific rape for that indictment. If you do not all agree on the specific rape that is listed for that indictment, you must find the defendant not guilty of this charge." Such a "unanimity instruction" is proper where an indictment alleges a single offense, and the "evidence shows multiple acts of allegedly criminal conduct." Commonwealth v. Keevan, 400 Mass. 557, 566 (1987). Third, the judge's instructions and the verdict slips, again without objection, made it clear that jurors had to base a unanimous verdict under each indictment on vaginal, oral, or anal aggravated rape, respectively. Fourth, the rapes occurred during a single continuing episode. "[I]t is well established that a single indictment for rape is proper where the alleged multiple acts of penetration are part of a continuing criminal episode." Commonwealth v. Crowder, 49 Mass. App. Ct. 720, 721-722 (2000). Contrast Commonwealth v. Barbosa, 421 Mass. 547, 550 (1995) ("very real possibility that the defendant was convicted of a crime for which he was not indicted," where grand jury returned single drug distribution indictment but evidence showed two separate drug transactions with two different buyers on the same day). Fifth, the defense theory at trial was that the victim consented, not that any of the acts she described did not occur.

10

4.  Jury instructions.  Next, having carefully reviewed the jury instructions "as a whole," we are satisfied that the judge did not err.  Commonwealth v. Kelly, 470 Mass. 682, 697 (2015).  The defendant points to two claimed errors in the instructions that allowed:  (1) the defendant to be "convicted on a joint-venture theory based on his role abetting penetration rather than committing penetration," and (2) the possibility that "the jury convicted the Defendant of aggravation based on the co-defendant's conduct on the acquitted count" of rape by oral penetration.  Based upon the instructions provided and the evidence presented, there was no error and no "substantial risk of a miscarriage of justice."  Freeman, 352 Mass. at 564.

One form of aggravated rape is proven through the additional element that the crime was "committed by a joint enterprise."  G. L. c. 265, § 22 (a).  Initially, the judge explained the "joint enterprise" element by incorporating the "joint venture" language in Commonwealth v. Zanetti, 454 Mass. 449, 470 (2009) (Appendix).[4]  He instructed the jury that a knowing participant in a crime is guilty if, with the intent required for the crime, he "personally committed" the acts or aided or assisted another in committing the crime.

_____

[4] The judge consistently used the phrase "joint venture" throughout the jury instructions.

11

On his own, the judge raised a concern with counsel at sidebar that the Zanetti instruction allowing a guilty verdict if a crime is "personally committed" may conflict with the necessity of proving a "joint enterprise" for aggravated rape. The judge noted, "I think I have to eliminate the fact that they can find them guilty if they simply committed the rape." Defense counsel agreed. The judge told jurors that the instruction he just provided on joint venture was not correct and to disregard it. He emphasized that the Commonwealth must prove beyond a reasonable doubt that the defendants were engaged in a "joint venture." He then provided the Zanetti instruction without the earlier reference to a crime being "personally committed."

After the jury retired to deliberate, the prosecutor questioned a portion of the joint venture instruction. The prosecutor suggested that the instruction should have retained the "personally committed language" while simply adding the phrase, "with another." After a lengthy discussion, the judge agreed, and defense counsel said he was "on board with that."

Accordingly, the judge brought the jury back into the courtroom and instructed them for a third and final time. He emphasized once again that aggravated rape required that the Commonwealth also prove the defendants engaged in a "joint venture." He then defined the elements of a joint venture:

12

"One, that the defendant personally committed all of the acts that constitute the crime with the co-defendant and with the shared intent to commit the crime; or, two that the defendant aided or assisted another person in committing the crime . . . ."  The judge asked jurors "to keep in mind the other aspects of the joint venture that I mentioned to you," and he followed up by providing written jury instructions.  These written instructions also stated that the Commonwealth had to prove the codefendants "consciously acted together before or during the crime with the shared intent to make the crime succeed."

The judge's corrected instructions, taken together, properly informed the jury that the Commonwealth had the burden of proving both shared intent and "that the rape[s] [were] committed by at least two people."  Commonwealth v. Medeiros, 456 Mass. 52, 60 (2010).  See Commonwealth v. Jansen, 459 Mass. 21, 28 n.20 (2011) (joint enterprise for aggravated rape examined through joint venture evidence); Commonwealth v. Basey, 82 Mass. App. Ct. 278, 281-283 (2012) (joint enterprise for aggravated rape proved through evidence of joint venture).

Even if the instructions were susceptible to another interpretation, we do not see any "substantial risk of a miscarriage of justice."  Freeman, 352 Mass. at 564.  At trial, the defendant disputed the issue of consent.  He testified that during consensual sex with the victim on the floor, she "ma[d]e

13

eye contact" with Jones (sitting nearby on a couch) and "pull[ed] on his pant leg. . . . [and] "[I]t seemed like she was kind of inviting him . . . into a threesome."  The defendant testified that he declined the threesome, got dressed, sat nearby on the couch, and waited while the victim and Jones engaged in consensual sex on the floor.  The defendant used his phone to take a "two-second video" of the pair having sex on the floor, and the victim warned, "You'd better not be recording."  The defendant laughed and showed them the videotape.  The victim dressed in the bathroom, and Jones dressed in the living room.  The defendant testified that the victim was "really pissed off" about the videotape.  The defendant and Jones left, but Jones returned briefly and retrieved a phone that he mistakenly left behind.  Given the focus on consent and the defendant's own testimony admitting that he and Jones had sex with the victim in close physical and temporal proximity, there is no risk that jurors convicted the defendant for conduct outside the scope of a joint enterprise under G. L. c. 265, § 22 (a).

Finally, we see no error in the judge's response to the following hypothetical questions posed by the jury:

"Suppose Defendant A is charged with [aggravated] rape orally, and we believe that the Commonwealth has proven beyond a reasonable doubt that Defendant A is guilty of all three elements.

"Also, suppose that Defendant B is charged with aggravated rape orally, and we do not believe that the Commonwealth

14

has proven beyond a reasonable doubt that Defendant B is guilty of Element 1 or Element 2, but we do believe that the Commonwealth has proven beyond a reasonable doubt that Defendant B is guilty of Element 3.

"First question. Would the verdict for Defendant A for the charge of aggravated rape orally be guilty or not guilty?

"Second question. Would the verdict for Defendant B for the charge of aggravated rape orally be guilty or not guilty?"

The judge conferred with counsel, and counsel agreed that jurors should be instructed to consider each indictment separately and to decide whether the Commonwealth proved each element beyond a reasonable doubt. The defendant now claims the judge told jurors "that the mens rea of the co-defendant was irrelevant to the question of aggravation." Contrary to the defense claim, the entirety of the judge's response does not show such an error:

"First of all, each of the indictments, and there are six indictments you have before you, each of the -- those indictments must be considered separately by you.

"Your verdict of not guilty or guilty for one indictment should not and does not control your verdict for any other. They must be considered absolutely separate.

"Secondly, in order for the defendants to be found guilty with respect to any one of the indictments, you must find that the Commonwealth has proven its case by finding that beyond a reasonable doubt that they have proven each of the three elements that I've presented to you.

"So in order to find either [of] the defendants guilty with respect to an indictment, you have to find beyond a reasonable doubt that the Commonwealth has proven each and every one of those elements.

15

"If the Commonwealth has failed to prove any one of those elements, you must find the defendant not guilty.

"Okay. So, again, with those principles in mind, you must consider each indictment separately.

"Whatever happens on any other indictment should not and does not affect or control you with respect to another indictment.

"And, in order for you to find anyone guilty, the Commonwealth must prove every single element of the three elements that you have before you on guilty beyond a reasonable doubt."

This response was well "within the discretion of the trial judge, who has observed the evidence and the jury firsthand." Commonwealth v. Wood, 469 Mass. 266, 293 (2014), quoting Commonwealth v. Delacruz, 463 Mass. 504, 518 (2012). There is nothing in this response that reduced the Commonwealth's burden of proof on the aggravated rape indictments or contradicted the judge's prior instruction that the Commonwealth had to prove that the codefendants "consciously acted together before or during the crime with the shared intent to make the crime succeed." The judge was not required to inform the jury, as the defendant argues, that "no defendant may be convicted of a joint venture unless at least one other is also guilty of a joint venture." The defendant's argument is based on Medeiros, 456 Mass. at 59-60, but that case concerned whether inconsistent joint enterprise verdicts required relief, not the content of

16

jury instructions on joint enterprise.  Thus, we discern no error.

Judgments affirmed.

Order denying motion to
  vacate convictions and to
  dismiss indictments
  affirmed.

By the Court (Neyman, Sacks &
  Hodgens, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  June 2, 2023.

---

[5] The panelists are listed in order of seniority.

17